All right, we are happy to hear argument in Campbell v. Toyota. And Mr. Zydell. Zydell. Zydell, we're pleased to hear from you. Thank you, Your Honor. Good afternoon. Good morning. And may it please the court. My name is Corey Zydell. It's an honor to be back in Richmond before this distinguished panel on behalf of Delphine Campbell. And this case comes before the court on three main issues, two jurisdictional and one merits. Whether there's standing on an informational injury or whether that injury was concrete, whether the amount of controversy was satisfied under the Class Action Fairness Act and the merits argument under Subtitle 10 of, Title 12 of the Merit Commercial Law Article. Class Action Fairness Act, I'll refer to as CAFA and the Merit Law Article, I'll refer to as CLEC. I want to focus today on CAFA and CLEC. And if the court has questions about the standing issue, I'm happy to address those. I believe those were addressed in the briefs. You said you were going to focus on what? On the CAFA, the issue under CAFA and then CLEC. Okay. And so, with respect to the Class Action Fairness Act, this court and the Supreme Court has had opportunity to address what it is that's trying to be determined by the district court as to whether or not it has jurisdiction of the case. It has to have more than 100 class members and there has to be $5 million in controversy. Today, we're focused on the $5 million in controversy. What the court is required to do under the Supreme Court standard is to determine what's at stake and whether that amount exceeds $5 million. So, what's at stake in this litigation? The damages in this case... Let me ask you something. When you get down to the jurisdictional amount, are we talking about under the CAFA statute, aren't we talking about jurisdictional facts that would lead to a clearly erroneous standard? Well, Your Honor, I think there's two sides to this argument. So, from the damages perspective, we believe it's a de novo review because we believe the district court improperly ruled as a matter of law what damages can be assessed and how to assess those damages. With respect to the number of class members leading up to that determination of $5 million, we believe that is a clearly erroneous standard because that's a factual determination as to the number of... Well, I mean, the damages question would depend in part upon the number of class members. That's correct, Your Honor, but that's correct in most situations and it's partially correct in this case, but you don't get to that calculation until you determine what damages are actually available to a person under the statute that you're suing under. So, that's number one. That's a de novo standard. And the second side of it is whether it is appropriate for a court to consider the name plainness individual damages allegation class-wide. And we believe that's a legal determination, not a factual determination. Why wouldn't it be appropriate? Why isn't it appropriate to take the name plainness allegation and make it class-wide? Why do you think it's appropriate or inappropriate to take the name plainness damages allegation and apply it class-wide? Well, Your Honor, we don't think it's... It's not a position that it's inappropriate in every circumstance. Like, for instance, in Scott versus Cricket communications, we don't believe that was inappropriate. When is it appropriate and when is it not? It's appropriate when the name plaintiff alleges that there's a harm that's class-wide that has the same damages. So, in Scott, this court found that the allegation was that each person who had a phone was damaged a couple hundred dollars. So, it's easy enough to take a couple hundred dollars, which the court took $200 and then multiplied it out by the number of people. That's not what happened in this case. In this case, Ms. Campbell alleged that her damages were $5,000. But under the statute, the individuals within the purported class, they would not have the same damages because they don't owe the same amount of money. They haven't repaid the same amount of money. Their cars weren't sold at a repossession sale for the same amount of money. So, if people have different amount of damages, does that mean that a district court, in order to determine jurisdiction under CAFA, has got to go through the amounts plaintiff by plaintiff by plaintiff? In other words, that introduces a rather difficult exercise and a difficult burden on the district court at the very outset of the case. There's an old rule of thumb that jurisdictional inquiries should be clean, cut and dried, resolved as quickly as possible because it's all preliminary and to the degree that we complicate the jurisdictional inquiry, we put the litigants through a lot of motions that are only preliminary. And so that's why the Supreme Court tells us repeatedly that jurisdictional inquiries should be quickly determined. But the question I have is if you can't take the named plaintiffs assessment of damages and apply it class-wide, the alternative to that is to go, you know, class member by class member by class member and figure out how much it is and that seems to me to complicate the task substantially. Well, and I understand your concern and that's not what we're asking here for today. We don't believe that it is a requirement that a judge, the district court, would have to go class member by class member in potentially 2,000. In this case, it's actually small compared to Scott where it was 50,000 potential people. What we're saying is that in this case Toyota had no trouble doing a class-wide analysis on the average deficiency amount class-wide. Why couldn't they have done the exact same thing on the other side, the damages per individual? They had the records, they could have done a statistically significant sample, even if it was 100, they could have gone through and said the average is this. But what they did was they said $5,000 for Campbell, so $5,000 for everyone. On the other side, when they're talking about the other side of the damages, which is the deficiency amount, they didn't use Campbell's deficiency amount because that was small. That was 3,500. They don't want that number multiplied out by the class. Does the Maryland statute provide for the recovery of statutory damages? Well, that's the merits issue before the court and we believe that it does. Where does it say that? If the debtor pays more than the remaining amount of the loan, it might be it could get that back, right? I mean, that's the point of the statute. It's not a hardball kind of statute. Correct, Your Honor. That the credit grantor can't, well, I think the distinction that we're making is that... If you could stay with my question, that would be great. I'm trying to answer you. You're suggesting your question that the... No, my question was whatever my question was, and I'll go back and restate it if you like. We believe... I heard your question, Your Honor. The answer is that yes, we believe 12-1018A2 provides for affirmative relief to consumers where the credit grantor has collected more than the principal amount of the loan. Where does it say that exactly? In the language of the statute? And you can look on rebuttal if you want. The purpose of the statute is simply to prevent or to prevent a debtor from having to pay more than the amount of the loan due. Right? I partially agree with that statement. The purpose of the statute is that... I think it's the commerce of it. Did she pay any additional money after receiving the post-sale notice, for instance? No, Your Honor. But we believe the purpose of the statute is to not allow the credit grantor to profit on a loan in which a violation has occurred. And that is the basis of the enactment. I thought it just prevented the creditor from collecting from the debtor beyond the principal amount of the loan. Correct, Your Honor. Stated that way, I agree. Right. Yes. Has that happened here? Yes, Your Honor. It has prevented... It has collected from the debtor more than the principal amount of the loan? Yes, Your Honor, because the sale of a repossessed motor vehicle is a payment. It's a prepayment. No, it is collected. You want to read out from the debtor. I understand what Your Honor is saying, but... Well, then can you answer me? Yes, the case law in Maryland is very specific that the... My question, it really was just a straightforward factual question. And I understand the question. We don't believe that it's the payment out of the debtor's pocket. From the debtor beyond the principal amount of the loan. Has that happened? Ms. Campbell has not paid out of her pocket more than the principal amount of the loan. Has that happened from the debtor? And that's what I'm saying. No, the answer's no. That's what I'm saying. She has not... That was really all I was asking. I understand that you want to argue more broadly, but my question was pretty straightforward. I'm sorry for confusing your question, Your Honor. She only paid... I'm sorry. I really am sorry if it was confusing. No, I would take the credit. It was not confusing. We can share it. Okay. She only paid around $9,000 out of pocket on this loan. And then there was a sale of her vehicle. Yes, I'm familiar with the facts. You want to take credit for the amount that it recovered from the ultimate resale of the... Correct, Your Honor. And if we don't give Ms. Campbell credit for the sale price of that vehicle, then she never has a claim under CLIC. She can't possibly ever... Would that be so bad? I mean, the statute had a pretty... The statute... It's one of the more... It's not really one of the most punitive of statutes. It has a pretty narrow focus, or so it seems to me. I agree with you on that. It's not a punitive statute. The purpose of the statute, and this is found in the legislative history from the General Assembly, in taking the language from the secondary mortgage loan law, is to make it so that a credit grantor does not profit off of a loan that's in violation of the statute. From the debtor. Correct, Your Honor. Right. Right. And that's where we get to the issue of whether or not the sale price of a motor vehicle is considered a payment from the debtor. And so for that, I directed the court toward two cases under the Retail Assault and Sales Act, and that case under this statute, CLIC, in which the Court of Appeals adopted those cases holding that the payment, the sale price of the vehicle, is a payment. So you're saying to me, to make sure I understand you, you're saying to me that the... when a company repossesses a car, okay, and then sells the car, and if it sells the car for more than the principal amount of the loan, that any surplusage is a payment from the debtor, right? Well, I would agree with that, but I would go further than that. I would say that the entire amount of the sale, not just the amount above principal, of the loan to the debtor. Right. To the extent that she could recover on it, only the amount that's beyond recovery of the principal would be a recovery. How does the sale price amount to the word payment? The car is at that point repossessed. It's in the possession of the creditor, and the creditor realizes a gain from the sale of that and applies it to the debt. But I thought a payment has a different connotation. And a payment from the debtor has an even more specific connotation. Well, you say there's a Maryland case that says the amounts recovered on repossession under CLEC amount to a payment? Your Honor, the implication from the case is that. What case is that? It's Biggest vs. Ford Motor Credit Company, and it adopts the holdings of Settles, Union, Tyndale vs. Settles. I have Union Trust vs. Tyndale, and First Virginia Bank vs. Settles. Go back to the Ford case. What do they say? What do they say about the repossession amount? So in that case, they were at the Court of Appeals based on whether there was a violation of the repossession statute. At the Court of Appeals, they held that CLEC applied rather than the Retail Installment Sales Act. With respect to the payment, the issue was whether or not the creditor could collect contractual interest after the sale of a vehicle or only pre-judgment interest. And the Court of Appeals adopted its prior rulings in these two other cases under the Retail Installment Sales Act, which held that the sale of a motor vehicle after repossession under Maryland law is considered a prepayment by the consumer. And that's why there can be no contractual interest after that date. There can only be pre-judgment interest after that date. That's a pretty attenuated way to conclude that the amounts recovered in the sale of a repossessed vehicle amount to a payment by the debtor. I don't know what the terms of the Retail Installment. You have to inference on the inference in your particular hypothetical. It seems to me it's an open question if you're making that contention, but I gather you are. You're suggesting that the $18,000 is a payment. Your Honor, I see my time is up, but I'd like to respond to that. I am making that argument, and I do believe that it is covered by Biggis v. Ford Motor Credit Corporation. My recollection of that case is that the focus was on what the creditor has to do, what the creditor does. That's right, Your Honor. Not what the debtor is entitled to under SELAC. Your Honor is correct. That case was about... It's not really apples and apples. Well, I would say that it was that I believe the Court of Appeals, and it's the very last paragraph of the majority's opinion. Right. I believe... I'm familiar. I understand your argument. I'm familiar with that case, and I... Right. Right. No, so I agree with you. It wasn't the central argument in that case, the central... Yeah, and it was also not the focus of... The question did not focus on the payment from the debtor. It focused on the creditor's obligation. I think we're... I actually think we're in complete agreement. Maybe we better stop. Okay, Your Honor. Thank you. My time has expired. Let me just indicate that in terms of focusing on what the creditor did, I understand that the prohibition was on collection efforts, not on the amount that it might recover from a sale after repossession, but rather after recovery of the principal, did the creditor persist in trying to collect fees or interest or special assessments or whatever. That part of it was, after the part of the purpose of the statute, was that after the sale had been consummated, the creditor was refrained... The creditor was to get off the debtor's back with its collection efforts. That's the vice that the statute was hanging out. Once you've recovered the principal on the loan, stop trying to harass the debtor with these different collection efforts. Your Honor, I respectfully disagree with that assessment because this court has held that other provisions of the statute don't even apply in an affirmative action. For instance, a declaration or an injunction to stop collecting. This court has stated you can't request that. That's not a portion of damages that are available to a consumer in an affirmative action. Only when they're being sued can they make that request. And so this court's position previously had been that there is no way for a consumer to get a credit grantor off their back until the credit grantor potentially continuously violated the statute and then collected more than the principal amount of the loan. So we're only... Thank you. Thank you, Your Honor. Ms. McClain. Yes, good morning, Your Honors. Anna McClain for the defendant Appellee, Toyota Motor Credit Corporation. The distinction I think that I drew from the case to which Mr. Zijel Is that close? Zijel. Zijel, I'm sorry. Was referring to it refers to that section of the statute that prohibits the credit grantor from knowingly violating the provisions of the subtitle. It's not the... it's not the... it's a different piece with a different purpose. Yes, that's correct, Your Honor. Section 12-1018 of the CLEC provides for two remedies. One in the case of of an unknowing violation in which the remedy is that the credit grantor may collect only the principal amount of the loan and may not collect anything additional. And then as Your Honor just referred to under subsection B, a credit grantor who knowingly violates any provision of the subtitle shall forfeit. Right. So the language is clear that those are opposing standards here. And then similarly under the section 12-1021 on which counsel seeks to predicate liability on behalf of Ms. Campbell, there are likewise two separate schemes, one for private sales and one for public sales. This was a private sale. So the court had asked Mr. Zijel a number of questions about the application of the sale proceeds. To the loan and whether that should be considered to be a payment by the borrower. And I think looking at the structure of the statute shows that in the case of a private sale, that is not correct. The private sale focuses on notice. And Mr. Zijel's claim on behalf of his client is that the notice that Ms. Campbell received omitted an item. And all of the items are specifically set forth under subsection 2 of subsection J of section 12-1021. So that is the focus of the private sale statute and then it provides that if the borrower considers the private sale to have been accomplished in a commercially unreasonable manner, the borrower can take that up with a commission or financial regulation. Or similarly, the borrower can seek a remedy under section 12-1018 prohibiting further collections. But those are the two remedies under the private sale. Right. Do you have a difference between the private and public sale? A private sale involves usually a they have to be pre-qualified as bidders on the vehicle. So anybody off the street can't walk in and make a bid. And that's normally the way repossession sales happen in this industry. Someone from the street can't? Cannot. In a public sale, anybody can show up and make a bid. But that typically tends to be inefficient because they haven't been pre-qualified. And so why the difference? I understand the difference and why the difference and how does the difference in remedy relate to the difference in the character of the sale? Well, I mean, I can only speculate as to what the legislature was thinking, but the way I see the statute is that the court and that the legislature in the case of a private sale focused on the buyer having sufficient notice so the buyer could monitor the commercial reasonableness. And if in receiving the notice it found that any of these items were not set forth could take the matter up with the commissioner of financial regulation. The buyer meaning the original buyer of the vehicle. Not the buyer in the repossession sale. No, I'm sorry. The original purchaser. That's correct. The original debtor. The debtor could take it up with the commissioner of financial regulation based on the notice whereas in the public sale context it discusses the application of the sale proceeds to the principal and that if the notice requirements are not followed the credit grantor shall not be entitled to any deficiency judgment. So the way I understand that if I can speculate about the legislature's thinking is that the legislature there was focused on the mechanics of the sale process and making sure that those were accomplished in a way that would provide the buyer with a remedy rather than focusing on the notice issue under a private sale. So, Under a private sale, is there a remedy under 1018? Yes, the remedy under 1018 is as we discussed earlier. Collecting more than the. Yeah, if you've paid more than the principal you can. And what's your argument that the credit for the repossessed vehicle is not a payment? Well, because it does come out to a little bit more, doesn't it? About a thousand dollars more if you add the repossessed amount. She paid about nine thousand. They got about 18,000, 27,000 and the loan amount was really 26,000 roughly. I believe that's correct your honor. But as I mentioned the statute is set up in two separate provisions for public and private sales and the portion that replies to private sales does not cover the application of the sale proceeds. That only is dealt with under the public sales. So, by the legislature's silence in not providing for application of the sale proceeds under the private sale portion of the statute we conclude and as the district court concluded that the sale proceeds were not to be considered a payment by the buyer under the private sale. So the private sale provision is simply related to sending the original buyer a notification as to whom the purchaser and the private sale was. Well, and there are a number of other requirements under subsection 2 of subsection J. There are about 10 things, you know, the unpaid balance at the time that the goods were repossessed, the refund credit of unearned finance charges. But is it a question primarily of notice to the original buyer? Yes, that is my conclusion from looking at the the structure of the statute that that is what the legislature had in mind. Notice is the focus of the private sale and procedural fairness. Where's the prohibition against collection efforts once the principal has been recovered? Where does that kick in? Well, the buyer can seek a remedy under 12-1018-2 in the case of a an unknowing violation as is alleged here or in the case of a knowing violation can seek a remedy under subsection B. But your argument in this case is that under 1018, the repossessed collection, the amount they got in the sale, the 18,000, is not is not addressed in 1018-A-2. 1018-A-2. It's not a collection. It is not a collection. From her. It is not a collection from her. Yeah. No, it is not. And so your argument is that the only remedy for the failure of notice would be a deficiency judgment, the prohibition against obtaining a deficiency judgment. Right, or a prohibition on obtaining a deficiency at all if a relief is sought from the commissioner of financial regulation. So the commissioner could could prohibit it without getting to the judgment issue. But if they didn't go to the commissioner, then it's the prohibition is obtaining a judgment. That is correct, your honor. And with respect to the information, the requirements that certain information be provided, a violation of that could also would also be addressable in some manner by the commissioner of insurance requiring that a standardized form with the requisite information be revised, redistributed, whatever. I can't really speculate about that. My read of subsection three is that the the commissioner of financial regulation determines whether the sale was commercially reasonable. I'm looking at all of the evidence. So I'm not sure that a re-notice would contribute to that because the sale would have already occurred. But going forward perhaps. Perhaps. Has the commissioner invalidated auctions? These are fairly common, these automobile auctions, aren't they? Yes, they are. Trade-ins at car dealers, they all go to auction, don't they? These private auctions. And people will buy up cars for their used car lots or public can buy their, I guess, through some agent or something or maybe they qualify. But has the commissioner invalidated the private auction mechanism? No. In any case, I mean, it's a specific case. Generally, I mean, it seems to me that it's sort of tacit that these auctions are a reasonable method of disposing of repossessed vehicles. Well, that's certainly what my client believes. That and that's pretty standard in the industry. That's what I have understood. But that is the industry method and it can be challenged, I suppose, but okay. Yes, it can. And that is the mechanism by which Ms. Campbell should have proceeded. I can also address the controversy issue that the court addressed with Mr. Zeidel. I agree with Your Honor, Judge Wilkinson, that the applicable standard is clearly erroneous with respect to Judge Grimm's analysis of the facts underlying his conclusion that CAFA jurisdictional requirements were met. The court tailored its analysis very closely to this court's decision in Scott v. Cricket in analyzing the estimates of the amounts in controversy, which the court in that case specifically held that over-inclusive evidence within reason is permissible. And in fact, it's not only permissible, it's statutorily authorized. The five million dollars describes the value of the matter in controversy. And so you don't necessarily, you may focus on the plaintiff's representative party's claim, but the real assessment is what is the value of the matter in controversy. And in this case, we're talking about all the people who have suffered or signed these agreements. And when you look at the matter in controversy, you can consider a lot of evidence, but the only evidence the court had was your affidavit, I gather. And that is correct, Your Honor. And as Judge Wilkinson earlier alluded to, the affidavit was as specific as it could be without doing an individual review of each borrower's loan file, because what Mr. Ziedle is alleging in the complaint is that Ms. Campbell's notice lacked a specific disclosure, the name and address of the buyer. So the only way you could determine how many people there were who fell into that category, if there were any other than Ms. Campbell, is by looking at the notice in each file. And as the court suggested earlier, that would make the analysis on a motion to remand and the removal to be overly burdensome. And there's no requirement that a defendant engage in that kind of effort. Counsel, you're obviously very well versed in this statute, and I appreciate that. I wonder if you could just take a step back and tell me what exactly is it that they're accusing you of? And why is it that you have not violated any provision of the statute? In other words, I think you have a more detailed grasp of all the different provisions of the statute than perhaps we do. And I'd like to take advantage of that by just asking you to look at it from a little broader perspective and say, what exactly is it that you see that they're, because they're something of a moving target, say, I mean, in terms of the violations that they are accusing you of. On the one hand, it's a failure of notice or something such amounts to a collection or no, it was a the repossession, say, was for more than the principal. And I'm having trouble pinning down exactly what it is on exactly what statutory violation that they're accusing you of. It could be any one of three, at least that are out there. So what are they accusing you of? Why have you not infringed the statutory provision? I want, I'm going to be in complete silence while you explain that. Well, you know, the district court didn't reach the merits of the notice because that wasn't before it. The court ruled on the issue of whether there's a provision for damages under the statute. And don't back up the question on me. Come, tell me, answer the question I asked. Well, the claim on the merits is that Ms. Campbell's notice lacked the purchaser's name and address and business address. Well, it has the name. It has the name, doesn't it? You're correct, Your Honor. It does. And that notice is part of the record before the court. It does lack the address and business address. And that could arguably be a technical violation of the statute. But as we have argued and as the district court found, there were no damages and no harm to the borrower on the basis of that violation. The remedy is a bar on collections. She did not pay anything after the notice was received, nor did she pay anything above principle. So those were the two bases for the district's court conclusion that there was, you know, essentially no harm, no foul here. We do not know if there were any other people who fell into that category, but even if there were, there are remedies under the statute, as we addressed earlier, to the extent that the borrower believes that the absence of that information made this sale commercially unreasonable. That can be addressed to the Commissioner of Financial Regulation and to the extent that any such borrowers have paid more than the principal amount, they can seek a remedy from the court under. Okay. Well, if there was no harm from the invalid notice, and as you put it, there's no harm and no foul, does that factor into the amount in controversy under CAFA? No, the court does not examine each each party's claim under CAFA in determining what amount is at issue. As Judge Niemeyer earlier pointed out, it's the amount potentially at issue in the case. So you have to assume without any other evidence that the claim applies to all of the borrowers in the same position, which was... To what extent do we take the amount of damages alleged as the amount in controversy? The court can take reasonable inferences based on the amount alleged, which is what it did. It engaged in the same analysis as the court. Because that's very often the way the amount in controversy is determined. It's not trying to go in and resolve the merits and find out an actual damages figure at the end because that would involve essentially a trial on the merits. It would. The shorthand way in which the amount in controversy is determined is through the amount alleged. That's correct, Your Honor. And in fact, the James v. Santander case that was titled in counsel's reply addresses that very issue and says that the defendant cannot be required to admit liability to confer federal jurisdiction, which is essentially what counsel's arguing here, that you would have to look at each individual notice and therefore... So what you're saying is for purposes of CAFA, if the name plaintiff alleges a certain amount in controversy or a certain amount of damages, a district court is entitled to multiply that by the number of class members to determine for CAFA purposes whether the five million is met. Yes. That would have the virtue of simplicity, would it not? It does. And certainly the name plaintiff is required to allege that he or she is an adequate representative of the class and has the, you know, similar claims that's sufficient to have standards. If you determine that the name plaintiff is an adequate representative, then you can... You're more justified, I think, in multiplying the amount alleged in damages without figuring out whether it's any kind of actual damage that the plaintiff is entitled to. Well, I don't think the district court has to engage in a class certification type analysis of whether the adequacy of representation requirement is met, but can engage in a sort of prima facie analysis, which is what Judge Brim did here in construing the name plaintiff's alleged damages of $5,000 and her approximately $8,000 deficiency and using those amounts as potentially indicative of the amount in controversy that, you know, the court does not require. The eight or the five, or the five or the eight, I mean, which amount? Well, he added them together. So the deficiency is... And she alleged both? Yes, and she alleges, of course, under the statute that TMCC should not be permitted to collect any of her deficiencies. So that amount is is also an issue in addition to the $5,000 that she claims was improperly collected from her. All right, even though, and even though that was born, even though that was somewhat contradicted by the district court's ultimate conclusion that there was no harm, more tangible harm, from the invalid notice, which was the plaintiff's chief contention, you don't let that after that, that finding deeper into the case doesn't undermine the amount in controversy allegations for purposes of jurisdiction. That's correct, Your Honor. The Brown case, which the court recently affirmed, made that precise distinction about whether the plaintiff had, whether the plaintiff has established jurisdiction is a different question from the court's power to dispose of the claim. It's a different threshold. So to the extent... That has to be the case because, I mean, I think that the Supreme Court has told us we want the jurisdictional arguments resolved more quickly rather than less. That is correct, Your Honor. And to the extent that counsel is suggesting a full damages analysis would have to be undertaken, it would not be feasible in the time for removal. All right, well, let's hear from your opposing counsel in response. Thank you, Your Honor. Thank you, Your Honors. I just wanted to quickly address this issue about what was alleged in the complaint for damages because Counsel for Toyota is suggesting that we alleged that there was some type of waiver of the deficiency amount, which is the second portion of the damages determination, $8,500 per class member. We did not request that in the complaint. That is why... No, but you alleged the allegations to suggest that, I mean, they have not tried to get a judgment, deficiency judgment, but you've alleged the facts and saying that they have forfeited any declaratory judgment. You have four or five allocations in the complaint that address that. And so as a consequence, that hasn't ripened, I suppose, but that's still at issue because if you were to win, they couldn't collect a deficiency judgment. And so it's the value of the matter in controversy. It affects their ability to claim the debt as originally agreed to. And your claim as to damages, you dropped the numerical amount in the amended complaint. You had it, what, at $5,100 something in the original complaint, but you summarized it basically saying all fees, interest, and so forth. And I gather that's the same $5,000 roughly, isn't it? Correct. And that's the affirmative damages. That's the affirmative damages. And you alleged also that they're not entitled to claim deficiency, didn't you? Not in this action, your honor. Because this court has specifically found that that cannot be raised. That is not a recoverable... That's not a recoverable claim in federal court. That's my whole point for emphasizing when I was talking to your colleague. It's not the amount of damages you're claiming. It's the value of the matter in controversy. Correct, your honor. And Toyota would be prohibited if they lost, while it would not be a damage amount, they would be prohibited from collecting the deficiency judgment. Which in this case is what? $3,500 or whatever it is. $3,500. Yes, your honor. Far from the $8,500 per class. Well, except now you're making an assessment as to the value and controversy of the class. Well, your honor. The value of the matter in controversy has to be $5,000,000. And the value of the matter in controversy, if you only had $1 in damage and the class you're purporting to represent each had $100,000 in damage, you're putting that in controversy. Correct, your honor. And if that were, that's the flip side of this case. If Campbell would have alleged that she had $100 in damages, we are pretty certain that Toyota would have come forward and done a person-by-person analysis to make sure that they had evidence. Now you're going to whether they came forward with enough evidence when you came forward with zero. And so they came forward with the number of loans, they came forward with the playout, they laid out all the payments in this particular loan. This one went in default two years into a six-year loan. So how about assuming that every one of the loans goes into default three years, every one of the default three years out of a six-year loan? I mean, you can make all kinds of assumptions, but you're trying to assess the value of the matter in controversy and not the damages. Correct, your honor. And that goes to the second point on this very issue, is that what we're saying here is that what they have stated as a fact in their affidavit is not a deficiency. That's why the evidence is insufficient from that side. What, the $8,000? Correct, your honor, because what the affidavit says is that that's the amount of unpaid interest costs and fees remaining on the loan after the repossession sale. That's not a deficiency. A deficiency is the amount that's owed on the loan after the sale of the vehicle. That's not what was put before the district court. What was put before the district court is unaccrued interest costs, actual costs and fees and unaccrued interest. And that's why I brought up Biggest Versus for Motor Credit Corporation, because under Maryland law, there is no unaccrued interest. When a credit grantor decides to sell a vehicle by repossession sale, there is no more contractual interest that can be recovered. So to make a claim that part of the damages in this case are unaccrued interest on a loan where there's been a repossession sale is legally incorrect. That's not a deficiency. A deficiency is the amount that's owed on the loan besides unaccrued interest. So in Ms. Campbell's case, it's $3,500. We don't know what that is for the remainder of the people because there's no evidence in the record of what that is. With respect to the issue of payment versus collection, I just wanted to bring back to the statutory language of 12-1018-A2. The court is suggesting or it is questioning that the amount of the sale is not a payment and that 12-1018-A2 requires a payment from the consumer. But during rebuttal, I sat down and I reread the statutory language and the statutory language doesn't say anything about payment. The statute specifically and only refers to collection. A collection with respect to the loan. There's no mention of a payment by the consumer. This statute is directed at what has been recovered by the credit grantor, not what has been paid by the individual. And the example I'd like to give is what if Ms. Campbell instead of being repossessed refinanced her loan with a new bank? That payment is not coming from her. It's coming from another person. But she borrowed that money to make that payment. That is her payment. Well, excuse me. That is a collection on the loan by Toyota, even though it's not a payment by Ms. Campbell. And if this court were to, I'm sorry, my time has expired. Go ahead. Okay. You can finish your sentence. Thank you, Your Honor. But if this court were to accept Toyota Credit Corporation's suggestion that that is not a payment, that in any of those situations a consumer would never get relief under the statute, even though Toyota Motor Credit Corporation or any credit grantor would have been fully compensated on the loan and potentially have violated it numerous times just because the payment didn't come directly out of the pocket of the consumer. Thank you for your time. Thank you. We'll come down on re-counsel and then we'll take a brief recess.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Allyson K. Duncan